UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF
PENNSYLVANIA

LYNN GREYGOR, ADMINISTRATOR           CIVIL ACTION NO.  2:14-CV-01254-NBF
OF THE ESTATE OF DEREK T.
GUIDOS,

      Plaintiff,

      v.

WEXFORD HEALTH SOURCES, INC.,
BUTLER HEALTH SYSTEM, INC., BUTLER
HEALTHCARE PROVIDERS t/d/b/a BUTLER
MEMORIAL HOSPITAL, BUTLER COUNTY,

      Defendants.

## **BRIEF IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

And now, comes Defendant Wexford Health Sources, Inc., by and through its attorneys,

Murphy Taylor, LLC and presents this Brief in Support of Motion for Summary Judgment as

follows:

This litigation was commenced by the filing of a Complaint on September 19, 2014.  An

Amended Complaint was thereafter filed. The Amended Complaint of Lynn Greygor,

Administratrix of the Estate of Derek T. Guidos, Deceased, alleges injuries and damages as a result

of Derek Guidos' incarceration at the Butler County Jail in 2012.  More specifically, from

November 6, 2012 until November 11, 2012, Derek Guidos was housed in the medical unit of the

Butler County Prison, where he was seen and treated many times by personnel of Defendant

Wexford Health Sources, Inc.  At approximately 4:45 p.m., on November 11, 2012, Derek Guidos

was transported from the Butler County Prison to Butler Hospital, arriving at 5:26 p.m., and passed

away the next day, November 12, 2012 shortly after 6 p.m.  See Amended Complaint at ¶¶ 17-39.

Count I of the Amended Complaint against Wexford Health is a state tort claim for medical malpractice sounding in negligence.  Count IV of the Amended Complaint is for violation of civil rights pursuant to 42 U.S.C. § 1983 against Wexford Health.[1]  More specifically, it is averred in Count IV that Wexford Health deprived Derek Guidos of his rights, privileges and immunities set forth in the Eighth and Fourteenth Amendments to the United States Constitution in various particulars, all resulting in his death.  Defendant Wexford Health filed an Answer and Affirmative Defenses to the Amended Complaint denying all allegations of liability, causation, and damages.

Defendant Wexford Health now moves for summary judgment as to Count IV.  It is the position of Wexford Health Sources, as more fully set forth below, that the pleadings, depositions, discovery materials, and other matters of record show that there is no genuine issue of material fact, and that Wexford Health is entitled to judgment as a matter of law.  F.R.C.P. 56(c).

**STANDARD OF REVIEW**

Summary judgment is appropriately granted where "the pleadings, deposition[s], answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed.R.Civ.P. 56(c).  An issue is "genuine" when the evidence is such that a reasonable jury could return a verdict for the nonmoving party.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Equimark Comm. Finance Co. v. C.I.T. Financial Service Corp., 812 F.2d 141, 144 (3d.Cir.1987).  Thus, where the record, when viewed as a whole, could not "lead a rational trier of fact to find for the non-moving party, summary judgment is proper."  Matsushita Elec.

---

[1] There are actually two Count IVs in the Amended Complaint. The instant motion of Wexford Health Sources is directed to the second Count IV, commencing at paragraph 66.

Indus. Co. v. Zenith Radio, 475 U.S. 574, 586 (1986); Hankins v. Temple Univ., 829 F.2d 437 (3d.Cir.1987).  When the moving party establishes the absence of a genuine issue of material fact, the burden is shifted to the non-moving party to "do more than simply show that there is some metaphysical doubt as to the material facts."  Matsushita, 475 U.S. at 574.  If evidence is "merely colorable" or is "not significantly probative," summary judgment should properly be granted. Anderson, 477 U.S. at 249; Equimark, 812 F.2d at 144.

Accordingly, the non-moving party "must set forth specific facts showing a genuine issue for trial and may not rest upon mere allegations, general denials, or …vague statements." Quiraga v. Hasbro, Inc., 934 F.2d 497 (3d Cir. 1991)).  Brightwell v. Lehman, 637 F.3d 187, 194 (3d.Cir.2011); Jackson v. City of Pittsburgh, 688 F.Supp.2d 379, 388 (W.D. Pa.2010). When the non-moving party will bear the burden of proof at trial, the moving party's burden can be "discharged by showing -- that is, pointing out to the district court -- that there is an absence of evidence to support the non-moving party's case." Celotex Corporation v. Catrett, 477 U.S. 317, 325 (1986).

### Plaintiff is Unable to Establish Deliberate Indifference to a Serious Medical Need

In Estelle v. Gamble, 429 U.S. 97 (1976) the Supreme Court articulated the standard to be used in analyzing constitutional claims by prisoners for inadequate medical treatment.

> "In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs. It is only such indifference that can offend "evolving standards of decency" in violation of the eighth amendment."

Id at 106.  Therefore, to succeed under these principles, plaintiffs must demonstrate (1) that the defendant was deliberately indifferent to his medical need and (2) that that need was serious.  It is

well settled that claims of negligence or medical malpractice, without some more culpable state of mind, do not constitute "deliberate indifference".   As the Estelle Court noted: "in the medical context, an inadvertent failure to provide adequate medical care cannot be said to constitute an unnecessary and wanton affliction of pain or to be repugnant to the conscious of mankind." Estelle at 105-106.  See also, Rouse v. Plantier, 182 F.3d 192, 197 (3.Cir.1999).  "…simple medical malpractice is insufficient to present a constitutional violation." Rouse, supra at 197.  "Certainly no claim is stated when a doctor disagrees with the professional judgment of another doctor.  There may, for example, be several acceptable ways to treat an illness."  White v. Napoleon, 897 F.2d 103, 110 (3.Cir.1990).

Deliberate indifference requires "obduracy and wantonness," Whitley v. Albers, 475 U.S. 312, 319 (1986); Rouse v. Plantier, 182 F.3d 192, 197 (3 Cir.1999). Proof of "deliberate indifference" presents a formidable and difficult standard, for good reason. Deliberate indifference "is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his actions." Board of County Commissioners of Bryan County v. Brown, 520 U.S. 397, 410 (1997). Under this standard, a "plaintiff must demonstrate that a municipal decision reflects deliberate indifference to the risk that a violation of a particular constitutional or statutory right will follow the decision." Id. at 411. This has been likened to conduct that includes a conscious disregard of a serious risk.  Farmer v. Brennan, 511 U.S. 825, 842 (1994).

In Natale v. Camden County Correctional Facility, 318 F.3d 575, 582 (3 Cir.2003), the Third Circuit further elaborated on Plaintiff's burden to establish deliberate indifference and the type of evidence required:  Deliberate indifference is a "subjective standard of liability consistent with recklessness as that term is defined in criminal law." Nicini, 212 F.3d at 811.  In Farmer v. Brennan, the Supreme Court held that finding a prison official liable for violating a prisoner's

Eighth Amendment rights requires proof that the official "knows of and disregards an excessive risk to inmate health or safety."  511 U.S. 825, 837, 114 S. Ct. 1970, 128 L.Ed.2d 811 (1994).  He must be "both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and …draw the inference."  Id.  To survive a summary judgment motion on this issue [Plaintiffs] "must point to some evidence beyond [their] raw that claim [Defendants] w[ere] deliberately indifferent," or put another way, some evidence "that [Defendants] knew or w[ere] aware of [the risk to Plaintiffs]."  Natale, supra at 582.

An examination of the records and materials on file demonstrates very clearly that there were "numerous instances" in which Derek Guidos received medical attention, along with x-rays, multiple medications, and attempts by Wexford Health personnel to treat his complaints.  See Baez v. Falor, 566 Fed.Appx.155, 157 (3.Cir.2014).  These instances of medical treatment and attention by Wexford Health personnel consist of the following:

October 19, 2012

- -- Wexford nurse performs comprehensive health assessment of Guidos.

November 6, 2012

- 3:30 p.m. -- Derek Guidos brought to the medical unit of the Butler County Prison at the direction of Becky Watterson, R.N.

- 5 p.m.  -- Vital signs checked by LPN Nancy Mohr, bowel sounds in all four quadrants.

- 5:30 p.m. -- Guidos vomits – dark brown in color – told not to flush, we will let doctor see emesis.  Entry made by LPN Nancy Mohr.

- 7 p.m.  -- Guidos given Tylenol 325 mg for abdominal pain by LPN Mohr, resting on bunk.

- Jeff Houk, Physician Assistant, sees Guidos.  Finds tender mid-epigastric region, guarding, some recent constipation.  Zantax prescribed, with Milk of Magnesia, order entered for x-ray of abdomen.

- Wexford LPN Nancy Mohr dispenses medications to Guidos.

November 7, 2012

- Morning --  Wexford nurse dispenses medications to Guidos.

- Abdominal film of Guidos performed.  X-ray results show that the abdomen was <u>unremarkable</u>.  (emphasis added)

November 8, 2012

- LPN Ruth Ruediger dispenses medications to Guidos.

- 1 p.m. -- LPN Nancy Mohr notes that Guidos is vomiting, no blood noted.  States he has not moved his bowels yet.  Given medication.

- Nurse dispenses Milk of Magnesia to Guidos.

- Nurse dispenses Milk of Magnesia to Guidos.

- 3:30 p.m. -- Wexford nurse checks on Guidos.

- 9:40 p.m.  -- LPN Ruth Ruediger sees Guidos, who states he has not gone to the bathroom.  Bowel sounds present in all four quadrants, meds dispensed.

November 9, 2012

- 10 a.m. -- Guidos taking medications.

- Morning -- RN Rebecca Watterson sees Guidos, who reports decrease in belly pain and nausea, vital signs checked by Ms. Watterson, stable. Reports to feel constipated, is able to push out small amounts of hard stool.

- RN Watterson speaks with physician assistant Jeff Houk on the phone about Guidos, and orders are received.

- Noon time.  RN Watterson speaks with Wexford medical director James Minshull, M.D. about Guidos, no new orders.  Nurse Watterson speaks with Guidos who is taking and retaining fluids.  No further complaints of vomiting.

- 3:30 p.m. -- Nurse Watterson sees Guidos after reports of dry heaving.

- 7:30 p.m. -- Nurse checks on Derek Guidos. He refuses his medication, Zantac.

November 10, 2012

- Morning -- Wexford LPN Nicole Shaffer Allshouse notes that Guidos refused his medication, Zantac.

- 4:45 p.m. – Wexford nurse checks on Derek Guidos.

- LPN Shaffer charts that Guidos refused his medication.

- Wexford RN Larry Sumansky dispenses Magnesium Citrate to Guidos.  Guidos instructed to let the nurse know if he throws up.  The correctional officer in the medical unit cell area is also instructed to let the nurse know if he vomits up the medication.  Guidos did not report any bowel movements by the end of the shift. Derek Guidos was up and about.

- LPN Nicole Shaffer charts that the patient refused his evening medication, Zantac.

November 11, 2012

- LPN Shaffer charts that Guidos refused medication, Zantac.

- 11 a.m. – RN Larry Sumansky speaks with Derek Guidos.  Guidos reported a small bowel movement with small amounts of hard small pellet-type BM.

- Approximately 2 p.m. – Derek Guidos tells the LPN on duty that he had another BM of a small amount of soft stool.

- 4:30 p.m. – LPN Shaffer checks on the patient.  Abdomen hard, rigid, Guidos sent to Butler Hospital.

As is readily seen, for the period November 6 – November 11, 2012, Wexford personnel had over 25 contacts with the patient, consisting of exam, x-ray, checking on the patient, observing the patient, dispensing medications, etc.  Far from demonstrating any type of deliberate indifference, the record establishes continuous, ongoing, intentional care and medical interventions. Where, as here, documents of record show ongoing medical care, including interactions by the staff at regular intervals, treatment by medical professionals, and even referral for an x-ray, such evidence does not establish deliberate indifference to a serious medical need. See Lucas v. Warden Lewisburg, 573 Fed.Appx. 205, 208 (3 Cir.2014); Baez, supra, 157-8 (record

7

establishes "numerous instances" in which patient received medical attention, tests were performed, medications were prescribed in attempts to treat his complaints; no deliberate indifference, which is an "exceedingly high standard" to meet); Hairston v. Director Bureau of Prisons, 563 Fed. Appx. 893, 895 (3 Cir, 2014) (no deliberate indifference where "significant level of care" was provided); Coley v. Iwaugwu, 303 Fed. Appx. 109, 111 (3 Cir, 2008) (no deliberate indifference where defendants provided plaintiff "with a regular and recurring course of treatment."). In Heath v. Shannon, 442 Fed.Appx. 712 (3 Cir.2011), the inmate came to the prison infirmary complaining of an upset stomach noting he had not had a bowel movement in 3-4 days. The physicians assistant wrote in the progress notes that the plaintiff's abdomen was "soft" and "non-tender," but not distended, and there were no masses. Concluding that the plaintiff was constipated, the plaintiff was given Milk of Magnesia and Colace. Later that year, the plaintiff experienced severe stomach pains and started vomiting around 2:45 a.m. The RN Wolfgang arrived at the plaintiff's cell, and the plaintiff was later transferred to the prison emergency room. RN Wolfgang took the plaintiff's vital signs and felt his abdomen. A doctor arrived later in the morning to administer pain medication. Later that morning, RN Wolfgang again took the vital signs, and performed an EKG.

The Court reviewed these facts, and found that they "fail to indicate that PA Hock and RN Wolfgang acted with deliberate indifference. Both defendants examined Heath upon his request and responded promptly to his complaints. Although Heath would have preferred a different course of treatment, his dissatisfaction does not establish a cause of action. Inmates of Allegheny Jail v. Pierce, 612 F.2d 754, 762 (3 Cir.1979) (Courts will "disavow any attempt to second guess the propriety or adequacy of a particular course of treatment…(which) remains a question of sound professional judgment.") 442 Fed.Appx. at 717.

8

Where a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, Federal Courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law. Montilla v. Prison Health Services Inc., 457 Fed.Appx. 212, 214 (3 Cir.2012). Deliberate indifference requires more than inadequate medical attention or incomplete medical treatment. Jackson v. City of Pittsburgh, supra; see also McCluskey v. Vincent, 505 Fed. Appx. 199, 203 (3 Cir, 2012) (no showing that delay in sending the patient to the hospital for surgery was done with an intent to inflict pain, for nonmedical reason, or with deliberate indifference; summary judgment appropriate).

The foregoing demonstrates beyond question that Wexford Health Sources gave frequent medical attention to this patient, which belies any claim for deliberate indifference. See Green v. Coleman, 575 Fed.Appx. 44 (3.Cir.2014) (record established that the plaintiff did receive some amount of medical attention, and he was merely disagreeing with its type and quantity. No deliberate indifference found); Sylvester v. City of Newark, 120 Fed. Appx. 419, 424 (3 Cir, 2005) ("to the extent that appellants argue that the medical professionals should have done more, or done it differently, or done it better, that is not deliberate indifference."). Summary Judgment is appropriate. See Birckbichler v. Butler County Prison, 2009 WL 2986611, p. 7 (W.D. Pa, 2009) (collecting cases).

In sum, the record established numerous contacts and medical treatment rendered by Wexford Health Sources to Mr. Guidos, including multiple one-on-one visits (App. 7-10), a health assessment at the admission to the jail (App. 11), multiple orders for medication signed by the physician assistant (App. 14), multiple administration of medications as shown by the MAR (App. 12), a booking observation report on admission to the jail (App. 2), and a consult with the M.D. Medical Director, all in an effort to address Mr. Guidos's medical needs. Further, although it had

been recorded that Mr. Guidos had vomited blood elsewhere in the jail, it is important to note that the physician assistant later had an opportunity to view the vomit, and saw nothing "that resembled blood" (App. 20). Thus, it is important to note that no medical professional ever viewed blood in the vomit of Mr. Guidos. It is worthy to note as well that Mr. Guidos was transferred to "processing" at various points during the evening, he was still observed and watched by correctional officers at the jail. Appendix 25-36 are the "15 Minute Check Sheets" completed by the correctional officers, in which they observe Mr. Guidos in a jail cell quite frequently, making notations on what and how he is doing. These same 15 Minute Check Sheets also contain references to nurses checking on or seeing Mr. Guidos, again establishing continuous, ongoing care, and refuting "deliberate indifference."

## Subjective Standard for Deliberate Indifference

The Supreme Court has also made it clear that deliberate indifference is a "subjective standard of liability consistent with recklessness as that term is defined in criminal law." Natale, supra, at 582. In Farmer v. Brennan, 511 U.S. 825 (1994), the Supreme Court held that finding a prison official liable for deliberate indifference requires proof that the official "knows of and disregards an excessive risk to inmate health or safety." 511 U.S. at 837 "The official must both be aware of facts from which the inference can be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Id at 837. As Judge Ambrose of this Court has observed:

> [Deliberate indifference] requires a court *subjectively* to determine whether the officials acted with a sufficient culpable state of mind. Deliberate indifference may be manifested by an intentional refusal to provide care, delayed medical treatment for non-medical reasons, a denial of prescribed medical treatment, or a denial of reasonable request for treatment that results in suffering or risk of injury…The defendant must be both aware of facts from which the inference could be drawn that a substantial harm exists and he must also draw the inference…An official is

10

> not deliberately indifferent if he fails to alleviate a significant risk that he should
> have identified.  Moreover, deliberate indifference to a serious medical need of a
> prisoner is distinguishable from a negligent diagnosis or treatment of a medical
> condition.

Miskovitch v. Hostoffer, 721 F.Supp.2d 389, 399-400.  (W.D. 2010); Jackson v. City of Pittsburgh, 688 F.Supp. 2d 379, 394 (W.D. Pa., 2010) ("A plaintiff must establish that the defendant knew of the substantial risk of serious harm and failed to act despite that knowledge."); Navolio v. Lawrence County, 406 Fed. Appx. 619, 623 (3 Cir, 2011) (to survive summary judgment, plaintiff must "point to some evidence suggesting that [medical provider] knew of a substantial risk of harm to [plaintiff] and failed to act despite that knowledge.").

In this case, Plaintiff contends that Wexford Health officials were deliberately indifferent to his signs and symptoms of a bowel obstruction, which eventually led to his death.  However, it is beyond dispute that Wexford Health officials ordered an abdominal x-ray and on November 7, 2012, that x-ray showed an unremarkable abdomen, with no evidence of bowel dilation or obstruction, App.  .  At that point, Wexford was not treating a bowel obstruction, but rather constipation. The condition of Guidos improved at times with beginning bowel movements suggesting the constipation was resolving.  Bowel movements were noted on the morning of November 9, 2012 as well as two more times on November 11, 2012.  The bowel movements of November 11 are particularly significant, since the nurse had administered magnesium citrate the day before.  It cannot possibly be said that Wexford personnel were aware of a substantial risk of serious harm, when the objective evidence before them was that there was no bowel obstruction and Guidos showed improvement at times. That is why it is reasonable for the Wexford Health personnel to prescribe and treat the patient with laxatives, such as Milk of Magnesia and Citrate of Magnesium.  Plaintiff can claim that Wexford Health was negligent in not ordering additional

tests, or in prescribing the wrong course of treatment.  However, negligent diagnosis or treatment of a medical condition does not rise to the level of a constitutional violation.  Kost v. Kozakiewicz, 1 F.3d 176, 185 (3.Cir.1993).  When the symptoms and conditions of Guidos deteriorated on November 11, the nurse examined Guidos, observed same and the decision was made and accomplished to transfer Guidos to the hospital.

Plaintiff has no evidence that Wexford employees knew or were aware of any substantial risk to Guidos and drew the inference of substantial harm.  Therefore, Plaintiff's claim of deliberate indifference must fail.

### No Policy or Custom

Even if deliberate indifference by a Wexford employee were found (which is denied), that would not be the end of the inquiry.  Wexford Health cannot be responsible for the acts of its employees for deliberate indifference or other constitutional violation, under a theory of respondeat superior or vicarious liability.  Monell v. New York City Department of Social Services, 436 U.S. 658 (1978). To obtain a judgment against a municipality, a plaintiff must prove that the municipality itself supported the violation of rights alleged.  Andrews v. City of Philadelphia, 895 F.2d 1469, 1480 (3 Cir, 1990). In order for Wexford Health to be liable, the Plaintiff must provide evidence that there was a relevant Wexford Health policy or custom and that the policy caused the constitutional violation Plaintiff alleges.  Natale v. Camden County Correctional Facility, 318 F.3d 575, 584 (3.Cir.2003).  Natale summarized the law as follows:

> Not all state action rises to the level of a custom or policy.  A policy is made "when a decision maker possess[ing] final authority to establish municipal policy with respect to the action issues a final proclamation, policy or edict." *Kneipp v. Tedder*, 95 F.3d 1199, 1212 (3d.Cir.1996) (quoting *Pembaur v. City of Cincinnati*, 475 U.S. 469, 481, 106 S.Ct. 1292, 89 L.Ed.2d 452 (1986) (plurality opinion)).  A custom is an act "that has not been formally approved by an appropriate decision-maker," but that is "so widespread as to have the force

of law." *Bryan County*, 520 U.S. at 404, 117 S.Ct. 1382.

There are three situations where acts of a government employee may be deemed to be the result of a policy or custom of the governmental entity for whom the employee works, thereby rendering the entity liable under § 1983.  The first is where "the appropriate officer or entity promulgates a generally applicable statement of policy and the subsequent act complained of is simply an implementation of that policy." *Bryan County*, 520 U.S. at 417, 117 S.Ct. 1382 (Souter, J., dissenting).  The second occurs where "no rule has been announced as policy but federal law has been violated by an act of the policymaker itself." Id.  Finally, a policy or custom may also exist where "the policymaker has failed to act affirmatively at all, [though] the need to take some action to control the agents of the government 'is so obvious, and the inadequacy of existing practice so likely to result in the violation of constitutional rights, that the policymaker can reasonably be said to have been deliberately indifferent to the need.' Id. At 417-18, 117 S.Ct. 1382 (quoting *City of Canton, Ohio v. Harris*, 489 U.S. 378, 390, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989)); *see also Berg*, 219 F.3d at 276 (holding that plaintiff must "demonstrat[e] that the municipal action was taken with 'deliberate indifference' to its known or obvious consequences").

Natale, supra, at 584.

Other cases have made clear that any policy or custom alleged by plaintiff must reflect or result in "deliberate indifference" to the rights of people. Carswell v. Borough of Homestead, 381 F.3d 235, 244 (3 Cir, 2004). See also, Swift v. McKeesport Housing Authority, 726 F.Supp. 2d 559, 571-2 (W.D. Pa., 2010).

In view of these standards, there is no "policy or custom" of Wexford Health which caused a constitutional violation in this case. The table of contents of the Wexford Policy Manual applicable to the Butler County Jail is included in the appendix at pages 46-48. The Wexford Policies embrace multiple matters within the jail, including diagnostic services, infection control, health assessments, patient safety, credentialing, and multiple other matters. The Policy Manual is 110 pages long. There is no contention or evidence that any of these policies or procedures are illegal or inappropriate or that any act of a Wexford employee is an implementation of some inappropriate policy, or that a policy caused injury.

Nor is there any contention or evidence in this case that "federal law has been violated by an act of the policy maker itself," Natale, supra. Nor is there any contention or evidence in this case that a policy maker has failed to act affirmatively, because the inadequacy of existing practices were "likely to result in the violation of constitutional rights," Natale.

In the absence of a formal policy or absence of policy, a municipal "custom" is conduct that, although not authorized by law, is so permanent and well settled as to virtually constitute law. B.S. v. Somerset County, 704 F.3d 250, 274 (3 Cir, 2013). A single action by a lower level employee acting under color of law does not suffice to establish either an official policy or custom. Fletcher v. O'Donnell, 867 F.2d 791, 793 (3 Cir, 1989).

Plaintiff has made no showing sufficient to establish an illegal "custom" under these standards. In an expert report, Jane Grametbaur, R.N. opines on behalf of the Plaintiff that Wexford's failure to follow nursing protocols indicates lack of training of staff. However there is nothing in the record to establish that it is a "custom" of Wexford not to follow nursing protocols. Rather, Plaintiff deposed Neil Fisher, M.D., corporate medical director for quality management and pharmacy, for Wexford Health Sources. Dr. Fisher testified that nursing assessment protocols are "guidance for nurses as a potential question to ask, a potential exam to do for a specific health complaint…[nursing protocols are] simply guidance, guidance for that staff member who feels that they need possible additional guidance in a particular area, something they might not be as familiar with…it's up to the nurse to decide whether that specific problem was actually covered by our protocol…the nurse can choose to use the protocol or not choose to use the protocol." Fisher deposition, pgs. 57-58. Appendix pages 51-54.  Accordingly, the record does not establish discretionary decisions of Wexford employees not to use nursing protocols or that it is "so permanent and well settled as to virtually constitute law." Somerset County, supra. Accordingly,

it cannot be said that there was a "custom" within Wexford never to use nursing protocols.

Even more fundamentally, the existence of protocols within the Wexford Health Sources Unit at the Jail is in fact evidence against deliberate indifference. The protocols establish a structure to help patients, thus refuting any claim that Wexford is deliberately indifferent to its patients. As stated above, the decision to use protocols or not is left in the sound medical judgment of the medical personnel.

As to the claims that Wexford Health failed to train its personnel, a claim of inadequate training requires a showing that Wexford Health is deliberately indifferent to the fact that a violation of a constitutional right is a highly predictable consequence of the inadequate training. Board of County Commissioners v. Brown, 520 U.S. 397, 409-10 (1997). To meet the deliberately indifferent standard, a plaintiff "must present scienter-like evidence . . . on the part of a particular policy maker." Simmons v. City of Philadelphia, 947 F.2d 1042, 1060 (3 Cir, 1991). To determine whether a municipality's alleged failure to train its employees amounted to a deliberate or conscious choice, for purposes of municipal liability, it must be shown that (1) municipal policy makers know that the employees will confront a particular situation; (2) this situation involves a difficult choice or a history of employees mishandling and (3) the wrong choice by an employee most frequently caused deprivation of constitutional rights. Doe v. Luzerne County, 660 F.3d 169, 179-180 (3 Cir, 2011). Failure to adequately train municipal employees can ordinarily be considered deliberate indifference only when the failure has caused a pattern of violations. Connicks v. Thompson, 131 S.Ct. 1350, 1360 (2011); Kelly v. Borough of Carlisle, 622 F.3d 248, 265 (3 Cir, 2010), citing Berg v. County of Allegheny, 219 F.3d 261, 276 (3 Cir, 2000); Carswell v. Borough of Homestead, 381 F.3d 235, 244 (3.Cir.2004).  "Only in limited circumstances can a municipality's decision not to train certain employees with respect to their legal duty to avoid

15

violating citizen's rights rise to the level of a custom for purposes of Section 1983." <u>Siceloff v.</u> <u>Township of West Deer</u>, 2013 WL 3989427, p. 8 (W.D.Pa.2013) (Conti, J.)   A municipality's liability under Section 1983 is "at its most tenuous" where a claim turns on a failure to train.  <u>Id</u>.

Plaintiff's proof under these standards fails in the instant case. There is no showing that the alleged failure to train reflected "deliberate indifference" in this litigation, or that it was "highly predictable" that Plaintiff's civil rights would be violated by the alleged failure to train. Nor has there been any showing that there was a history or pattern of Wexford employees mishandling patients at the jail, or that wrong choices by employees would frequently cause deprivation of constitutional rights. <u>See</u> <u>Cahill v. Live Nation</u>, 866 F. Supp. 2d 503, 523 aff'd 512 Fed. Appx. 227 (W.D. Pa., 2011) (failure to train will be considered deliberate indifference only where the failure has caused a pattern of violations); <u>Carswell v. Borough of Homestead</u>, 381 F.3d 235, 244 (3 Cir, 2004) ("proof of a pattern of constitutional violations required"). <u>See</u> <u>Doe v. Luzerne</u> <u>County</u>, 660 F.3d 169, 180 (3 Cir, 2011) (no evidence of history of county employees mishandling production of training videos).  "Without notice that a course of training is deficient in a particular respect, decisionmakers can hardly be said to have deliberately chosen a training program that will cause violations of constitutional rights." <u>Connick v. Thompson</u>, 131 S.Ct.1350, 1360 (2011).

In short, Plaintiff's proof falls far short of required standards under the case law.

## <u>No Acquiescence by Policy Maker</u>

To the extent that Plaintiff relies upon a custom of Wexford, Plaintiff must also show that a policy maker acquiesced in that custom. "A plaintiff must show that an official who has the power to make policy is responsible for either the affirmative proclamation of a policy or acquiescence in a well settled custom." <u>Bielevicz v. Dubinon</u>, 915 F.2d 845, 850 (3 Cir, 1990);

Andrews v. City of Philadelphia, 895 F.2d 1469, 1480 (3 Cir, 1990), citing Jett v. Dallas Independent School District, 491 U.S. 701 (1989); Rees v. Office of Children and Youth, 744 F.Supp. 2d 434 (W.D. Pa., 2010), aff'd 473 Fed. Appx. 139.

Plaintiff's proof instantly does not establish that any policy maker of Wexford was responsible for the alleged "custom" urged by the Plaintiff. There simply is no proof of records that any policy maker, as defined by state law, was aware of or acquiesced in any alleged constitutional violations or illegal customs of Wexford Health Sources, Inc. Plaintiff's proof falls far short in this required element of her claim.

The question of who is a "policy maker" is a question of state law. City of St. Louis v. Praprotnik, 485 U.S. 112, 142 (1988). "In looking to state law, a court must determine which official has final, unreviewable discretion to make a decision or take an action. "When a subordinate's decision is subject to review by the municipality's authorized policy makers, they have retained the authority to measure the official's conduct for conformance with their policies." (Emphasis in original) Andrews, supra at 1481, citing City of St. Louis v. Praprotnik, 485 U.S. 112, 127 (1988).

Since Plaintiff has failed to identify any authorized policy maker who knew or acquiesced in any alleged custom or constitutional violations alleged by Plaintiff, her claim must fail and summary judgment is appropriate.

## Lack of Causation

In addition to showing the existence of an official policy or custom, Plaintiff must also prove that the municipal practice was the proximate cause of the injury suffered. Bielevicz, supra at 850. To establish the necessary causation, a plaintiff must demonstrate a plausible nexus or affirmative link between the municipality's custom and the specific deprivation of constitutional

rights at issue. Id. A "direct causal link" between the municipal policy or custom and the alleged constitutional deprivation is required. Carswell v. Borough of Homestead, supra, 381 F.3d at 244. A municipality is not liable under Sec. 1983 unless its policy or custom is the "moving force" behind the constitutional violation. Swift v. McKeesport Housing Authority, 721 F.Supp. 2d 559, 571 (W. Pa., 2010) (Conti, J.); Barkley v. Westmoreland County Children's Bureau, 853 F.Supp. 2d 522, 531 (W.D., Pa., 2012) (Hornak, J.).

In the present case, no policy of Wexford Health on November 6 through November 11, 2012, caused the outcome of this matter, and did not cause or contribute to Derek Guidos's death. The record establishes that in the later afternoon of November 11, 2012, Wexford Health determined that Derek Guidos should be transferred to Butler Memorial Hospital for further care and treatment. This was accomplished. Derek Guidos arrived at the emergency department of Butler Hospital at 5:26 p.m. on that day. App. 42. The emergency department of Butler Hospital administered tests, took vital signs and a CAT scan was ordered and taken.  A bowel obstruction was diagnosed that evening.  See Butler Hospital emergency room record – Appendix at page 42.[2]

It is also undisputed that a surgeon did not see Guidos until the next day, November 12, 2012 at approximately 4 p.m. (Complaint, § 37). Guidos was taken to surgery that afternoon, but passed away at approximately 6:15 p.m. when he went into cardiac arrest. Complaint, § 39. Thus, approximately 24 hours passed between the time that Wexford sent the patient to the hospital, and the time when a surgeon first saw Derek Guidos and made the decision to take him to surgery. Further, at the time that the patient was transferred to Butler Hospital, he had a "reversible and

---

[2] Guidos was seen and treated in the Butler Memorial Hospital Emergency Room by James Minshull, M.D., in his capacity as an emergency room physician at Butler Hospital, employed by a medical practice unrelated to Wexford Health Sources. Dr. Minshull, under a separate, individual contract with Wexford Health Sources, was also the Medical Director at Wexford Health Sources at the Butler County Jail. (App. 48.)

treatable surgical emergency. Twenty four hours later that was not the case." (App. 44.) This was the conclusion of the Plaintiff's own surgeon expert Steven R. Wanamaker, M.D. Dr. Wanamaker goes on to state that the CT scan of Mr. Guidos on admission demonstrated a significant problem demanding immediate attention. Yet hospital doctors failed to recognize Mr. Guidos's acute surgical abdomen in a timely fashion. This delay was a direct cause of Mr. Guidos's preventable death. App. 44.

Any chain of alleged causation is completely broken since Wexford Health Sources made sure that Guidos, upon showing of symptoms indicating a possible serious condition, was transferred to Butler Memorial Hospital in time for definitive treatment to resolve his medical issues.  There is no "direct causal link" between any actions or conduct of Wexford Health Sources which caused a constitutional deprivation. Summary Judgment is appropriate.

### Conclusion

For all of these reasons, Count IV of the Amended Complaint against Wexford Health Sources must be dismissed. The materials and records on file demonstrate that there was no deliberate indifference to the medical condition of Derek Guidos by Wexford Health Sources, while Mr. Guidos was an inmate at the Butler County Jail. Furthermore, there is no evidence of record to establish that any Wexford Health Source employee knew of or disregarded an excessive risk to inmate health or safety, a subjective standard required under the case law. Further, there was no policy or custom of Wexford causing any constitutional violation of Mr. Guidos, and no policy maker acquiesced in any alleged violation. There is no direct causal link between any municipal policy or custom and the alleged constitutional deprivation. Finally, Plaintiff's own expert opinion establishes that Mr. Guidos had a reversible and treatable surgical condition at the time that Wexford Health Sources arranged for the transport of the patient to Butler Hospital, but

because of delays at the hospital, Mr. Guidos passed away. What happened at Butler Hospital is the moving force.

Wexford Health Sources would respectfully request that summary judgment be entered in its favor and against the Plaintiff on Count IV of the Amended Complaint.

Murphy Taylor, L.L.C.

_s/Peter J. Taylor_____
Peter J. Taylor, Esquire
Attorney for Wexford Health Sources
Pa. I.D. #26506
Murphy Taylor, LLC
326 Third Avenue
Pittsburgh, PA 15222
(412) 255-0200
murphytaylorllc@verizon.net
Firm ID #625

_s/Arthur J. Murphy, Jr._____
Arthur J. Murphy, Jr., Esquire
Attorney for Wexford Health Sources
Pa. I.D. #16412
Murphy Taylor, LLC
326 Third Avenue
Pittsburgh, PA 15222
(412) 255-0200
murphytaylorllc@verizon.net
Firm ID #625

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a true and correct copy of the foregoing **BRIEF IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT** was electronically served on this 4th day of December, 2015, upon the following attorneys of record as follows:

Joshua P. Geist, Esquire
Goodrich & Geist, P.C.
3634 California Avenue
Pittsburgh, PA 15212
josh@goodrichandgeist.com

Michael R. Lettrich, Esquire
Marie Milie Jones, Esquire
Gulf Tower, Suite 3510
707 Grant Street
Pittsburgh, PA 15219
mlettrich@jonespassodelis.com

James W. Kraus, Esquire
Pietragallo Gordon Alfano Bosick & Raspanti
38th Floor
One Oxford Center
Pittsburgh, PA 15219
jwk@pietragallo.com

MURPHY TAYLOR, LLC.

__*s/Peter J. Taylor*_____
Peter J. Taylor, Esquire