IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| LYNN GREYGOR, Administrator of the Estate of Derek T. Guidos, | Civil Action No. 2:14-cv-01254-NBF |
| Plaintiff, | JUDGE NORA BARRY FISCHER |
| v. | |
| WEXFORD HEALTH SOURCES, INC., BUTLER HEALTH SYSTEM, INC., BUTLER HEATLHCARE PROVIDERS, trading and doing business as BUTLER MEMORIAL HOSPITAL and BUTLER COUNTY, | ELECTRONICALLY FILED |
| Defendants. | JURY TRIAL DEMANDED |

## BUTLER COUNTY'S
## BRIEF IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

### I.     RELEVANT PROCEDURAL HISTORY

This civil action arises out of the death of Derek Guidos in the Butler Memorial Hospital in November of 2012. Prior to that hospitalization, Mr. Guidos was an inmate at the Butler County Prison.

The Amended Complaint, (ECF Doc. 31), asserts medical negligence claims against Butler Memorial Hospital and Wexford Health Sources, a private corporation contracted to provide medical care to the inmates of the Butler County Prison. The Amended Complaint also asserts civil rights claims brought pursuant to 42 U.S.C. § 1983 against Wexford Health Sources, Butler County, former Warden Shaffer, and County Commissioners McCarrier, Pinkerton, and Eckstein. On December 23, 2014, the Court entered an Order dismissing Messrs. Shaffer, McCarrier, Pinkerton and Eckstein. (ECF Doc. 34).

{W0086032.1}

Discovery in this matter is now closed. Butler County moves for summary judgment because, for the reasons set forth herein, there is no evidence that Butler County, through its employees, were deliberately indifferent to Mr. Guidos's serious medical needs.

## II.     STATEMENT OF THE CASE

The facts relevant to the disposition of Butler County's Motion for Summary Judgment are set forth in the accompanying Concise Statement of Undisputed Material Facts, which is incorporated by reference herein.

## III.    SUMMARY OF THE ARGUMENT

Summary judgment should be entered in Butler County's favor because there is no evidence that its policies, practices, and procedures were the moving force in causing any employee to be deliberately indifferent to decedent's serious medical needs. The evidence of record is replete with evidence of correctional officers making the medical staff aware of Mr. Guidos's complaints and condition. The evidence documents numerous instances of the medical staff examining and treating him. The medical staff was of the opinion that Mr. Guidos condition was constipation and that he did not need to go to the hospital. Non-medical correctional officers are entitled to rely on medical professionals' determinations, and cannot be held deliberately indifferent under these circumstances. Because no individual violated Guidos's civil rights, no *Monell* liability can attach.

Plaintiff may attempt to argue that the County should be held liable because on a few evenings he was housed in the Processing section of the jail instead of the Medical Department. This claim fails because the relevant issue is whether or not medical officials believe that an

inmate should remain in the facility. The correctional officers could rely on the medical staff's diagnosis and plan of care irrespective of housing in a different section of the jail.

Plaintiff may argue that the County should be held liable because the Medical Department was not staffed 24 hours a day. There is no constitutional or statutory requirement that a small jail have round the clock medical staffing. Even if there was, there is no evidence that it would have made any difference because the undisputed evidence is that the medical staff was aware of his condition and did not believe he required hospitalization earlier.

Plaintiff may criticize the County because correctional officers did not entirely complete the watch sheets reflecting what Mr. Guidos was doing on a few occasions. That is irrelevant to the issue of deliberate indifference, because the records are correctional records that are not reviewed by the medical staff. They did not affect his care. Nor is there evidence that anything occurred during such times that warranted attention which was not received.

Plaintiff may also attempt to argue that the County violated a Pennsylvania regulations concerning review of the adequacy of medical care. First, the regulation was not violated. The Pennsylvania Department of Corrections, who is responsible for inspecting the jail for compliance, found that the jail did comply before and after the incident. Further, a new medical provider was in the jail. A year had not passed since they began providing care, so an annual review had not been triggered in any event. Further, any claim that the regulation was violated is inappropriate, because a violation of a state regulation cannot be asserted via § 1983.

In short, the civil rights portion of this case is not supported by the evidence. Summary judgment should be entered in the County's favor.

## IV. ARGUMENT

### A. Standards applicable in *Monell* claims.

A local government like Butler County can be held liable under § 1983 "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury" complained of by the plaintiff. *Monell v. Dept. of Soc. Servs. of City of New York*, 436 U.S. 658, 694 (1978). In *Andrews v. City of Philadelphia*, 895 F.2d 1469 (3d Cir. 1990), the Third Circuit explained:

> A government policy or custom can be established in two ways. Policy is made when a 'decisionmaker possess[ing] final authority to establish municipal policy with respect to the action' issues an official proclamation, policy, or edict. A course of conduct is considered to be a 'custom' when, though not authorized by law, 'such practices of state officials [are] so permanently and well-settled' as to virtually constitute law.

*Id.* at 1480 (quoting *Beck v. City of Pittsburgh*, 89 F.3d 966, 971 (3d Cir. 1996) (citations omitted). "Once a § 1983 plaintiff identifies a municipal policy or custom, he must 'demonstrate that, through its deliberate conduct, the municipality was the moving force behind the injury alleged.'" *Berg v. County of Allegheny*, 219 F.3d 261, 276 (3d Cir. 2000) (quoting *Bd. of County Comm'rs of Bryan County v. Brown*, 520 U.S. 397, 404 (1997) (internal quotations omitted)). "That is, a plaintiff must show that the municipal action was taken with the requisite degree of culpability and must demonstrate a direct causal link between the municipal action and the deprivation of federal rights." *Bryan County*, 520 U.S. at 404. If "the policy or custom does not facially violate federal law, causation can be established only by 'demonstrating that the municipal action was taken with deliberate indifference as to its known or obvious consequences.'" *Berg*, 219 F.3d at 276 (quoting *Bryan County*, 520 U.S. at 407) (internal quotations omitted); *see also City of Canton v. Harris*, 489 U.S. 378, 389 (1989).

**B.     There is no evidence that any correctional officer was deliberately indifferent.**

Here, because no Butler County employee violated Mr. Guidos's civil rights, the Court does not even need to reach Butler County's, policies, practices, and procedures. If there was no underlying violation of an individual's civil rights, no claim against an entity defendant can prevail. *See, e.g., Grazier ex rel. White v. City of Philadelphia*, 328 F.3d 120, 124 (3d Cir. 2003) ("There cannot be an 'award of damages against a municipal corporation based on the actions of one of its officers when in fact the jury has concluded that the officer inflicted no constitutional harm.'") (quoting *City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986) (per curiam)). Obviously, unless a government official acting under color of state law violated an individual's civil rights, a violation could not have been caused by a policy, practice or procedure of a local agency. Finding a civil rights violation by an employee is a prerequisite before the *Monell* analysis needs to be considered.

Derek Guidos was a pre-trial detainee. While pre-trial detainees are protected by the Fourteenth, not the Eighth, Amendment to the United States Constitution, claims of deliberate indifference to the serious medical needs of pretrial detainees are analyzed under traditional Eighth Amendment standards. *See, e.g. Natale v. Camden County Correctional Facility*, 318 F.3d 575, 579 (3d. Cir. 2003) (citing *Boring v. Kozakiewicz*, 833 F.2d 468, 472 (3d Cir.1987) (applying, in claim for inadequate medical care by a pre trial detainee is sufficient under the Fourteenth Amendment, the standards applicable to Eighth Amendment claims).

To establish a constitutional violation arising out of an alleged deprivation of medical care, a plaintiff must show a prison official was 1.) "deliberately indifferent" 2.) to a "serious medical need" of the plaintiff. *See, e.g., Estelle v. Gamble*, 429 U.S. 97, 104 (1976).

"Deliberate indifference" can be shown where the prison official: 1) knows of a prisoner's need for medical treatment but intentionally refuses to provide it; 2) delays necessary medical treatment based on a non medical reason; or 3) prevents a prisoner from receiving needed or recommended medical treatment. *Monmouth County Correctional Inst. Inmates v. Lanzaro*, 834 F.2d 326, 346-47 (3d Cir. 1987). In order to rise to the level of deliberate indifference, a defendant's state of mind must rise to the level of "willful disregard":

> [A] prison official cannot be found liable . . . for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference may be drawn that a substantial risk of serious harm exists and also draw the inference.

*Nickens v. Good*, 2007 WL 1875810 (W.D. Pa. June 27, 2007) (quoting *Farmer v. Brennan*, 511 U.S. 825, 827 (1994)).

It is well-settled that non-medical correctional officials cannot form the scienter necessary for deliberate indifference by relying on the medical official's diagnoses and plans of care. In *Spruill v. Gillis*, 372 F.3d 218 (3d. Cir. 2004), the Third Circuit explained:

> If a prisoner is under the care of medical experts . . . a non medical prison official will generally be justified in believing that the prisoner is in capable hands. This follows naturally from the division of labor within a prison. Inmate health and safety is promoted by dividing responsibility for various aspects of inmate life among guards, administrators, physicians, and so on. Holding a non medical prison official liable in a case where a prisoner was under a physician's care would strain this division of labor. Moreover, under such a regime, non medical officials could even have a perverse incentive not to delegate treatment responsibility to the very physicians most likely to be able to help prisoners, for fear of vicarious liability.
>
> Accordingly, we conclude that, absent a reason to believe (or actual knowledge) that prison doctors or their assistants are mistreating (or not treating) a prisoner, a non medical prison official . . . will not be chargeable with the Eighth Amendment scienter requirement of deliberate indifference.

*Id.* at 236 (affirming the grant of defendant correctional officers' motion to dismiss).

Nor are non-medical correctional officials required to respond directly to an inmate's medical complaints when the inmate is under the care of health care professionals. For example, in *Iseley v. Beard*, 200 Fed. Appx. 137 (3d. Cir. 2006), an inmate brought a civil rights claim against health care professionals and non-medical employees alleging deliberate indifference to serious medical needs. As to the correctional officials, the plaintiff argued "that they are nonetheless liable because they were aware of these conditions and did not act to secure him proper treatment." *Id.* at 142. The Third Circuit rejected this argument as a matter of law, noting that the non-medical employees "are not medical professionals and cannot 'be considered deliberately indifferent simply because they failed to respond directly to the medical complaints of a prisoner who was already being treated by a prison doctor.'" *Id.* (citing *Durmer*, 991 F.2d at 69; *Spruill*, 372 F.3d at 236). Other unpublished Third Circuit opinions also follow this same principle. *See, e.g., Innis v. Wilson*, 334 Fed. Appx. 454, 456-57 (3d. Cir. 2009); *Smith v. Municipality of Lycoming County*, 335 Fed. Appx. 147 (3d. Cir. 2009); *Davila Bajana v. Sherman*, 278 Fed. Appx. 91, 91 (3d. Cir. 2008).

The United States District Court for the Western District of Pennsylvania has repeatedly dismissed inmates' medical claims against correctional employees when an inmate is under the care of medical personnel. "The general rule is that where a prisoner is being treated by medical personnel, non-medical prison officials cannot be deliberately indifferent for failing to intervene in the medical treatment and/or medical decisions." *Young v. Beard*, 2008 WL 2693860 (W.D. Pa. April 04, 2008) (report and recommendation adopted as modified on other grounds, 2008 WL 2693859 (W.D. Pa. June 30, 2008) (citing *Durmer v. O'Carroll*, 991 F.2d 64, 69

(3d Cir. 1993). *See also McCoy v. Beard*, 2008 WL 3544772 at *3 (W.D. Pa. August 12, 2008) (citing *Durmer*, 991 F.2d at 69; *Thomas v. Zinkel*, 155 F. Supp.2d 408, 413 (E.D. Pa. 2001)). As the Honorable Keith Pesto observed:

> In the absence of truly unusual circumstances, (such as a systemic failure that is not alleged here), correctional personnel who leave the medical care of inmates to the medical personnel within a prison are not deliberately indifferent because they do not have the requisite state of mind for liability. *Spruill v. Gillis*, 372 F.3d 218, 236 (3d. Cir. 2004). . . . To suppose that a correctional officer could be held liable under such circumstances for not attempting some independent medical care would be a poorly thought out legal rule. It is also precluded by the Supreme Court's definition of state of mind necessary for liability:
>
> [A] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official **knows of and disregards** an excessive risk to inmate health and safety; the official must be both aware of facts from which an inference could be drawn that a substantial risk of serious harm exists, **and he must also draw the inference.**
>
> *Farmer v. Brennan*, 511 U.S. 825, 837 (1994) (my emphasis). Disregard of an inmate's complaints is not equivalent of an inmate's needs or of a risk of serious harm.

*Sever v. Bauer*, 3:11-cv-00029-KRG KAP ECF Doc. 57, at 1-2 (Memorandum Order dated 8/01/12) (emphasis in the original).

Here, the correctional officers were entitled to rely on the medical staff to care for Mr. Guidos. The evidence of record is replete with facts demonstrating their knowledge that Wexford Health was caring for Mr. Guidos. Nurse Mohr's progress notes document that at 3:30 p.m. on November 6, 2012, a correctional officer informed her that Guidos had vomited blood. Ex. N (Progress notes). Guido was evaluated by medical, and was housed in a cell in the Medical Department so he could be more-closely monitored. *Id.* (documenting care by Nurse Mohr); Ex. O (Daily Cell Housing Changes and Releases) (documenting Guidos being housed in the Medical Department). The correctional staff was aware that while he was housed in the

Medical Department, he was given an x-ray at 2 p.m. on November 7, 2012. Ex. Q (BAU check sheet). The correctional staff was aware that in the next two days, the nurses were examining Mr. Guidos and giving him medications. *Id*. When a correctional officer saw Guidos vomit at 3:30 p.m. on November 9, the officer knew that Nurse Watterson followed up with Guidos, and that a nurse saw Guidos again at 7:30 p.m., reporting that he was "OK." *Id*. A correctional officer saw Guidos in the Medical Department on November 10, 2012 at 12:15 p.m. with a nurse and receiving medicine. *Id*. When Guidos reported that he was experiencing an increase in pain that afternoon at 4:30, the officer saw a nurse giving him medicine within the next half hour. *Id*. On November 11, 2012 at approximately 11:00 a.m., Guidos told a correctional officer that he had discomfort. Ex. N (Progress notes). The officer asked Nurse Sumansky to see Mr. Guidos. *Id*. Nurse Sumansky did so. That afternoon at 3:45, Mr. Guidos complained of pain and was seen by a nurse at 4:15. Ex. Q (BAU check sheet). The evidence clearly demonstrates that Guidos was being treated by the medical staff, and that the correctional officers knew that.

Indeed, as Wexford Health will no doubt detail in their Brief, their health care professionals were caring for Mr. Guidos. Even assuming, for the sake of argument, their treatment was so deficient as to constitute deliberate indifference, there is no basis to conclude that the correctional officers could have known that. The condition in question was constipation and stomach pain. This is not a case where it would be obvious to a layperson that a medical diagnosis is obviously incorrect, for example, where an inmate has a bone protruding through the skin yet a nurse diagnoses it as only a bruise. Given that Mr. Guidos was under the ongoing care of healthcare professionals for what was believed to be constipation, the correctional staff was not required to second guess their diagnosis and treatment

determinations. *See, e.g., Sever, supra*, at 1-2. Because the medical staff was treating Mr. Guidos and the correctional staff knew that, they could not form the scienter to be deliberately indifferent. *See, e.g., Spruill*, 372 F.3d 236. Because no County employee was deliberately indifferent to Mr. Guidos's serious medical needs, summary judgment should be entered in the County's favor. Plainly, its policies, practices, and procedures could not have been the moving force in causing a civil rights violation because no underlying violation exists.

C.  **Mr. Guidos's housing in Processing on three evenings does not change the legal analysis.**

Plaintiff may try to argue that because Plaintiff was moved to Processing on the nights of November 6, 9, and 10, 2012, and correctional officers observed Mr. Guidos at that time, the County is liable for deliberate indifference to serious medical needs. If Plaintiff raises that theory, it fails for several reasons.

First the fact that while in Processing Mr. Guidos was not in a medical cell is irrelevant. In *Spruill*, for example, the inmate was housed in the RHU. *Spruill*, 372 F.3d at 234. The relevant issue is whether a medical official has examined an inmate and made a determination as to the appropriate course of care. Here, the medical defendants examined Mr. Guidos regularly, opined that he was constipated, and that he could be appropriately treated in the jail. Where he was housed in the jail during these limited times has no bearing on whether there was deliberate indifference to serious medical needs.

Second, as is detailed in the preceding section of this Brief and in the County's Concise statement, the Medical Department was evaluating and treating Mr. Guidos. They were aware of Mr. Guidos's condition before and after each of the times he was housed in Processing. The evidence of record makes clear that the medical staff did not believe Mr. Guidos needed to be

in the hospital before those evenings when Mr. Guidos was housed in Processing. The medical staff did not believe that Mr. Guidos needed to be in the hospital when he left Processing and was returned to a cell in the Medical Department. The evidence is that Medical did not believe that Mr. Guidos needed to be taken to the hospital until approximately 4:15 p.m. on the afternoon of November 11, 2012 when Nurse Allshouse examined him and heard no bowel sounds. Ex. N (Progress notes); Ex. T (Allshouse depo at 21). Because the medical staff was aware of Guidos's condition and did not believe that Guidos needed to be in the hospital before that time, the correctional staff did not need to second-guess their medical judgment. They could not have formed the necessary scienter to constitute deliberate indifference. *See, e.g., Spruill*, 372 F.3d at 236. If Mr. Guidos had a medical complaint on one of those evenings, and there is no evidence that his condition was any different on those evenings than it was when Plaintiff was housed in the Medical Department, they cannot be considered deliberately indifferent simply because they failed to respond directly to such medical complaints. Guidos was already under the care of the medical staff who believed that he was just constipated and did not need to be in the hospital. *See Iseley*, 200 Fed. Appx. at 142 (citing *Durmer*, 991 F.2d at 69; *Spruill*, 372 F.3d at 236).

D.  **The staffing levels in the Medical Department did not violate the Constitution, did not affect Mr. Guidos's outcome, and were not the product of deliberate indifference.**

It is anticipated that Plaintiff will argue that Butler County should be held liable because the Medical Department was not staffed from 10:00 p.m. until 6 a.m. This, too, does not rise to the level of a civil rights violation.

As a factual matter, even though no medical staff person was on site between 10 p.m. and 6 a.m., inmates did have access to medical care during those time periods. Medical staff

was available 24 hours a day to respond to medical questions.  Ex. D (Depo. of N. Little at 48); Ex. E (Depo. of P. Shaffer at 103-104). If a medical emergency arose overnight, inmates could be sent to the hospital, at Wexford Health's expense. Ex. A (Health Services Agreement at §1.4 ); Ex. B (Depo. of R. Watterson) at 108-109; Ex. E (Depo. of P. Shaffer at 39-40).

There is no statutory or case law requirement that a small county jail like the Butler County Prison have medical staff on-site 24 hours per day. Further, the staffing level was approved by the Pennsylvania Department of Corrections. County jails are subject to annual inspections by the Department of Corrections. 37 Pa. Code. § 95.220b(1).  The DOC inspected the Butler County Prison in 2011 and 2013, and found no violations relative to the provision of medical care to its inmates. Ex. X and Y. Allowing such a claim to go forward would be to encourage a jury to retrospectively second guess the staffing levels when the DOC had deemed the levels to be appropriate.

A theory premised on not having a medical staff member on site 24 hours a day would also fail for lack of causation. Here, Guidos experienced the onset of constipation, vomiting and abdominal pain that remained between November 6 and 11, 2012. Guidos was evaluated by the Medical Staff and moved to a cell in the Medical Department as of November 6, 2012. Ex. N (Progress notes) and O (Daily Cell Housing Changes and Releases).  The medical staff did not believe that he needed to be in the hospital until his condition worsened on the afternoon of November 11. Ex. N (Progress notes); Ex. T (Allshouse depo at 21).  If that same medical staff had been present 24 hours a day, leading up to the worsening of conditions, there is no basis to conclude that they would have formed a different opinion about whether Mr. Guidos should have been in the hospital.

Finally, there is no evidence that this staffing level was the product of deliberate indifference. There is no evidence that at the time in question a County official with final decision-making authority was aware that the staffing levels were inadequate, and yet approved them for the purpose of denying treatment for inmates' serious medical conditions.

**E.     BAU check sheets are not medical records and do not affect medical care.**

It is anticipated that Plaintiff will criticize Butler County because correctional officers did not fill out the BAU check sheets when Mr. Guidos was in Processing on the evenings of November 7 and 10, 2012. This is not a sufficient basis to impose liability on Butler County.

Critically, check sheets are correctional, not medical documents. Ex. B (Depo. of R. Watterson) at 97-98. The medical staff does not rely upon check sheets. Indeed, Nurse Watterson, the Health Services Administrator for Wexford Health Sources, testified that her staff has nothing to do with the check sheets. *Id*. There is no evidence of the medical staff ever reviewed check sheets or relied on what is recorded on them in making medical judgments.

A failure to complete check sheets could not constitute deliberate indifference to serious medical needs. "Deliberate indifference" can be shown where the prison official: 1) knows of a prisoner's need for medical treatment but intentionally refuses to provide it; 2) delays necessary medical treatment based on a non medical reason; or 3) prevents a prisoner from receiving needed or recommended medical treatment. *Monmouth County Correctional Inst. Inmates*, 834 F.2d at 346-47. Because check sheets are not relied upon by the medical department, completing check sheets is not medical care. At most, a failure to complete these

correctional documents would constitute ordinary negligence, a claim that could not be asserted against Butler County.[1]

Further, the fact that the check sheets were not filled out does not mean that officers were not watching Mr. Guidos those evenings. It is believed that when the move to Processing occurred, the transporting officer did not bring the check sheet with him. Ex. E (Depo. of P. Shaffer at 85). However, Processing is staffed 24 hours a day by correctional officers. Ex. E (Depo. of P. Shaffer at 57). There is no basis to conclude that he was not observed.

Because check sheets are not relied upon by the medical staff, any claim premised on them would also fail for lack of causation. A plaintiff must prove that the civil rights violation was proximately caused by a municipal policy, practice or procedure. *Bryan County*, 520 U.S. at 404 (requiring proof of "a direct causal link between the municipal action and the deprivation of federal rights."). *Bielevicz v. Dubinon*, 915 F.2d 845, 850 (3d Cir. 1990) (In order to prove *Monell* liability, a plaintiff must prove that a "municipal practice was the proximate cause of the injuries suffered."). "To establish the necessary causation, a plaintiff must demonstrate a 'plausible nexus' or 'affirmative link' between the municipality's custom and the specific deprivation of constitutional rights at issue." *Id*. Because check sheets are not used for medical purposes or relied upon by the medical staff, the failure to complete every entry on the check sheets could not have caused Mr. Guidos to be denied medical care.

Moreover, any such theory would fail under *Monell*. There is no express written policy of failing to complete check sheets. There is no evidence that an individual with final policymaking authority ordered officers not to fill out a check sheet for Mr. Guidos. There is no

---

[1] *See* the Political Subdivision Tort Claims Act, 42 Pa. C.S.A. § 8541 *et seq*.

evidence of a pattern or practice of officers not completing check sheets for inmates. Therefore, even if the failure to complete check sheets was deliberate indifference, they were not caused by a policy, practice or procedure of Butler County. Even if there were, a plaintiff must prove that the policy, practice or procedure was the product of deliberate indifference or violation of federal law. *See Berg v. County of Allegheny*, 219 F.3d 261, 276 (3d Cir. 2000) (quoting *Bryan County*, 520 U.S. at 404) (requiring a plaintiff to "'demonstrate that, through its deliberate conduct, the municipality was the moving force behind the injury alleged.'") "That is, a plaintiff must show that the municipal action was taken with the requisite degree of culpability[.]" *Bryan County*, 520 U.S. at 404. If "the policy or custom does not facially violate federal law, causation can be established only by 'demonstrating that the municipal action was taken with deliberate indifference as to its known or obvious consequences.'" *Berg*, 219 F.3d at 276 (quoting *Bryan County*, 520 U.S. at 407) (internal quotations omitted); *see also City of Canton v. Harris*, 489 U.S. 378, 389 (1989).

For all these reasons, any one of which by itself would be sufficient, summary judgment is necessary if Plaintiff attempts to pursue such a claim.

## F. The County did not violate Pennsylvania regulations concerning review of medical care.

Finally, it is anticipated that Plaintiff will allege that Butler County should be held liable because it allegedly violated a Pennsylvania regulation, 37 Pa. Code § 95.232(7), arguing that the County did not perform sufficient annual review of the health care system to ensure that adequate health care was being provided to its inmates.

A violation of a state statute cannot be enforced via Section 1983. The plain language of section 1983, and underscored by the Supreme Court in *Maine v. Thiboutot*, 448 U.S. 1, 100

S.Ct. 2502, 65 L.Ed.2d 555 (1980), solely supports causes of action based upon violations, under the color of state law, of <u>federal</u> statutory law or constitutional rights." *Benn v. Universal Health Sys.*, 371 F.3d 165, 174 (3d Cir.2004) (emphasis added). "Section 1983 does not provide a cause of action for violations of state statutes." *Id*. Even if Butler County violated this Pennsylvania regulation, it would not state a viable civil rights claim.

Even if a violation of this state regulation could create a legally-cognizable cause of action, the County did not violate that regulation. Section 95.232(7) states as follows:

> Written local policy must provide for an annual documented review of a prison's health care delivery system by the prison and when necessary, revisions shall be made to each health care procedure and program by the prison.

*Id*. The Department of Corrections inspects county jails for compliance with these requirements. 37 Pa. Code § 95.220b(1). The DOC inspected the Butler County Prison in 2011 and 2013 (but not 2012). No violations of this requirement were found. Ex. X and Y. The County was in compliance before and after the incident. Plainly, Butler County did not violate this code section.

Even if it did, it would not have made a difference. The County hired Wexford Health to provide medical care to its inmates, with that care beginning on February 1, 2012. Ex. B (Depo. of R. Watterson at 22). Prior to that, health care was provided by Southern Health Partners. *Id*. at 22. By the time of Plaintiff's being sent to the hospital, Wexford Health Sources had been in the Butler County Prison for 9 months and 10 days. They had not even been there a year, so there was no need for an annual review as of the time Mr. Guidos was sent to the hospital. Review for the prior year would have concerned Southern Health Partners, not Wexford Health. It would not have changed anything. Any annual review for Wexford Health would have

occurred after Mr. Guidos had died. Again, it would not have changed the outcome. Such a claim fails for lack of causation.

## V.   CONCLUSION

There is no basis to conclude that a County employee violated Mr. Guidos's civil rights, let alone that a County policy, practice or procedure caused a (non-existent) violation. Summary judgment is appropriate in the County's favor on all claims.

JONESPASSODELIS, PLLC

BY:  s/Michael R. Lettrich
MICHAEL R. LETTRICH, Esquire
PA I.D. No. 80635
E-Mail: mlettrich@jonespassodelis.com

MARIE MILIE JONES, Esquire
PA I.D. No. 49711
E-Mail: mjones@jonespassodelis.com

JEFFREY COHEN, ESQUIRE
PA I.D. No. 76512
E-mail: jcohen@jonespassodelis.com

Gulf Tower, Suite 3510
707 Grant Street
Pittsburgh, PA  15219
Phone:  (412) 315-7272
Fax:  (412) 315-7273

Counsel for Defendant,
BUTLER COUNTY

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the foregoing document has been forwarded to all counsel of record by:

    \_\_\_\_\_ U.S. First Class Mail, Postage Paid

    \_\_\_\_\_ Hand Delivery

    \_\_\_\_\_ Certified Mail, Return Receipt Requested

    \_\_\_\_\_ Facsimile Transmittal

    \_\_\_\_\_ UPS Delivery

    __X__ Electronic Filing/Service

at the following address:

| | |
|---|---|
| Doug J. Olcott, Esquire<br>DALLAS W. HARTMAN, P.C.<br>201 Green Ridge Drive<br>New Castle, PA 16105<br>*(Counsel for Plaintiff)* | Joshua P. Geist, Esquire<br>GOODRICH & GEIST, P.C.<br>3634 California Avenue<br>Pittsburgh, PA 15212<br>*(Counsel for Plaintiff)* |
| Arthur J. Murphy, Jr., Esquire<br>Peter J. Taylor, Esquire<br>MURPHY TAYLOR<br>326 Third Avenue<br>Pittsburgh, PA 15222<br>*(Counsel for Wexford Health Sources, Inc.)* | James W. Kraus, Esquire<br>John A. Schwab, Esquire<br>PIETRAGALLO GORDON ALFANO BOSICK & RASPANTI, LLP<br>The Thirty-Eighth Floor<br>One Oxford Centre<br>Pittsburgh, PA 15219<br>*(Counsel for Butler Health System, Inc. and Butler Healthcare Providers t/d/b/a Butler Memorial Hospital)* |

                                                 JONESPASSODELIS, PLLC

Date: December 4, 2015                       s/Michael R. Lettrich
                                                 MICHAEL R. LETTRICH, Esquire
                                                 MARIE MILIE JONES, Esquire
                                                 JEFFREY COHEN, Esquire

                                                 Counsel for Defendant,
                                                 BUTLER COUNTY