IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| LYNN GREYGOR, Administrator of the Estate of Derek T. Guidos,<br><br>Plaintiff,<br><br>v.<br><br>WEXFORD HEALTH SOURCES, INC., BUTLER HEALTH SYSTEM, INC., BUTLER HEATLHCARE PROVIDERS, trading and doing business as BUTLER MEMORIAL HOSPITAL and BUTLER COUNTY,<br><br>Defendants. | Civil Action No. 2:14-cv-01254-NBF<br><br>JUDGE NORA BARRY FISCHER<br><br>**Electronically Filed**<br><br><br><br>**JURY TRIAL DEMANDED** |

## BUTLER COUNTY'S
## CONCISE STATEMENT OF UNDISPUTED MATERIAL FACTS

**I.    Overview of provision of medical care at the Butler County Prison**

1.    Medical services for inmates at the Butler County Prison are provided by co-defendant Wexford Health Sources pursuant to a contract dated January 18, 2012. Ex. A (Health Services Agreement) at § 1.1 ("County contracts with Wexford Health for the delivery of all medical, mental health, and dental services to inmates of the Prison, to comply with standards of reasonably necessary medical care.").

2.    Prior to Wexford Health Sources, medical care was provided to the inmates at the Butler County Prison by Southern Health Partners, Inc. Ex. B (Depo. of R. Watterson at 22).

3.    On February 1, 2012, Wexford Health Sources took over the provision of health care at the Butler County Prison from Southern Health Sources. Ex. B (Depo. of R. Watterson at 22).

4. Rebecca Watterson, RN was the Health Services Administrator ("HSA") at the Butler County Prison from the time Wexford Health Sources took over the provision of health care at the Butler County Prison on February 1, 2012. Ex. B (Depo. of R. Watterson) at 15, 22, 25.

5. At all times material to this lawsuit, Wexford Health Sources contracted with Dr. James Minshull to serve as its Medical Director at the Butler County Prison. Ex. B (Depo. of R. Watterson) at 38-39.

6. At all times material to this lawsuit, Dr. Minshull also worked in the emergency room at Butler Memorial Hospital. Ex. B (Depo. of R. Watterson at 40); Ex. C (Depo. of J. Minshull, M.D. at 11-12).

7. Nicholas Little, Wexford Health Sources' Vice President of Contracting and Compliance were involved in the negotiation of the Health Services Agreement between Wexford Health Sources and Butler County. Ex. D (Depo. of N. Little at 13, 17).

8. When Wexford Health Sources contracts to provide health care services, the safety of inmates is taken into consideration. Wexford Health Sources will not enter into a contract it believes would be unsafe for the inmates. Ex. D (Depo. of N. Little at 49-50).

9. During Mr. Guidos's incarceration in October and November 2012, the Medical Department at the Butler County Prison was staffed from 6:00 a.m. until 11:00 p.m. Ex. B (Depo. of R. Watterson) at 60-61; Ex. E (Depo. of P. Shaffer at 38-39).

10. Wexford Health Sources was available twenty-four hours per day provide emergency services to inmates. Ex. F (Depo. of N. Fisher, M.D. at 46-47; Ex. G (Policy J-204, "Health Care Liaison").

11. If an inmate had a medical problem during a time when the Medical Department was unstaffed, correctional officers had access to Wexford by telephone 24 hours a day. Ex. D (Depo. of N. Little at 48); Ex. E (Depo. of P. Shaffer at 103-104).

12. If a medical emergency occurred when the Medical Department was unstaffed, inmates could be sent to the hospital for care. If an inmate were sent to the hospital, the inmate's medical care would be paid by Wexford Health Sources. Ex. A (Health Services Agreement at § 1.4 ("Wexford shall provide, at its own cost, emergency medical care, as medically necessary, through arrangements to be made by Wexford Health with local health providers."); Ex. B (Depo. of R. Watterson) at 108-109; Ex. E (Depo. of P. Shaffer at 39-40).

13. Wexford Health Sources has had medical autonomy over medical decisions for the inmates at the Butler County Prison. Ex. F (Depo. of N. Fisher, M.D. at 42); Ex. H (Policy J-202, "Medical Autonomy").

14. When there is a medical decision to be made at the Prison, the medical staff has final authority to make that decision. Ex. D (Depo. of N. Fisher, M.D. at 39-41).

15. If an inmate is housed in a cell in the Medical Department, the inmate might be moved to the Processing area during the time when the Medical Department is unstaffed by Wexford Health Sources. Ex. E (Depo. of P. Shaffer at 54).

16. Processing is the area of the prison where the commitment process starts for new inmates, including the processing of an inmate's paperwork. Ex. E (Depo. of P. Shaffer at 54).

17. Processing is staffed 24 hours a day by correctional officers. Ex. E (Depo. of P. Shaffer at 57).

18. A correctional officer will make a round through the Medical Department every 30 minutes. Ex. E (Depo. of P. Shaffer at 89).

19. Moves to Processing could occur if there were only one inmate in a medical cell when Wexford Health was not present because the inmate could be better observed in Processing instead of an officer doing 30 minute rounds through the Medical Department. Ex. E (Depo. of P. Shaffer at 54).

20. If there were inmates of different genders housed in the Medical Department overnight, the County would put an extra officer on shift in that Department. Ex. E (Depo. of P. Shaffer at 55).

21. Butler County Prison Policy 9.1 requires that "the health care authority must meet with the facility administrator annually and submit annual statistical reports on the health care delivery system and environment." Ex I (Butler County Prison Policy 9.1 (C)).

II.   **Derek Guidos's medical course at the Butler County Prison**

   A.   **Commitment and initial medical screening of Derek Guidos.**

22. On October 8, 2012 Derek Guidos was committed to the Butler County Prison after being arrested on a bench warrant for disorderly conduct and harassment. Ex. J (Bench Warrant).

23. On October 9, 2012, a medical observation report by correctional staff was completed. He did not report any active medical problems. Ex. K (Medical Observation Report).

24. On October 19, 2012, Wexford Health Sources Nurse Nancy Mohr, LPN performed a more detailed health assessment on the decedent. At that point, his observations appeared normal. Ex. L (Health Assessment).

B.  Treatments following the onset of symptoms

### November 6, 2012

25.  On November 6, 2012, Mr. Guidos complained of abdominal pain when he appeared for a court hearing accompanied by a correctional officer. Ex. M (Discharge Summary).

26.  Thereafter, Ms. Guidos was evaluated Nurse Nancy Mohr of Wexford Health Sources. He complained of nausea and vomited. Nurse Mohr advised him to take fluids and if he did not improve, to call for medical. Ex. N (Progress notes).

27.  At 3:30 p.m. on November 6, 2012, a correctional officer called Nurse Mohr to tell her that Guidos had vomited blood. Ex. N (Progress notes).

28.  Nurse Mohr called Health Service Administrator ("HSA") Rebecca Watterson, RN for guidance. Nurse Watterson instructed that Guidos be brought from general population to the medical unit so that he could be more-closely monitored. Ex. N (Progress notes).

29.  At 4:10 p.m., Mr. Guidos was moved from the G-Pod where he had been housed to the Medical Department. In the Medical Department, Guidos was housed in cell 4. Ex. O (Daily Cell Housing Changes and Releases).

30.  At 5:00 p.m., Nurse Mohr examined Guidos and took his vital signs. Ex. N (Progress notes).

31.  That evening, Jeff Houk, PA examined Mr. Guidos. Guidos told Houk that he could not keep anything down and had vomited an hour before. Houk ordered Zantac and an x-ray of Guidos's abdomen. Ex. N (Progress notes); Ex. P (Physician Orders).

32.	At 10:28 p.m., Mr. Guidos was moved to the Processing unit at the Prison. Ex. O (Daily Cell Housing Changes and Releases).

### November 7, 2012

33.	At 9:15 a.m., Mr. Guidos was moved back to the Medical Department placed in cell 8. Ex. Q (BAU check sheet).

34.	On the morning of November 7, 2012, the correctional staff began recording their observations of Mr. Guidos on a document called a "BAU check sheet." Ex. Q (BAU check sheet).

35.	BAU check sheets are correctional documents the prison uses when correctional officers do fifteen or 20minute checks on an inmate. The medical staff has nothing to do with them. Ex. B (Depo. of R. Watterson) at 97-98.

36.	At approximately 2:00 p.m. on November 7, the x-rays were taken. The x-ray was interpreted by Walter Uyesugi, D.O as "normal without evidence of bowel dilation or obstruction." Ex. R (Mobilex Radiology report).

37.	At 9:55 p.m., Guidos was moved to the Processing area for the evening. Ex. P (BAU check sheet).

38.	The BAU check sheet was not filled out that night for Mr. Guidos. Deputy Warden Shaffer believes that when Mr. Guidos was moved from the Medical Department to Processing, the transporting officer may have forgotten to bring the sheet with him. Ex. Q (BAU check sheet). Ex. E (Depo. of P. Shaffer at 85).

39.	If the inmate's condition were deteriorating, a staff report would have been generated and a referral to medical would have been made. Ex. E (Depo. of P. Shaffer at 86).

40.     No staff report or call to medical was made that evening. Ex. E (Depo. of P. Shaffer at 86).

41.     According to Deputy Warden Shaffer, the absence of a staff report or call to medical indicates the correctional officers in Processing observed nothing out of the ordinary with Mr. Guidos that night. Ex. E (Depo. of P. Shaffer at 86).

### November 8, 2012

42.     At 8:50 a.m., Guidos was moved back to the Medical Department and housed in cell 7. Ex. Q (BAU check sheet).

43.     At 1:00 p.m. on November 8, Guidos vomited. Nurse Nancy Mohr examined him and gave him milk of magnesia. ); Ex. N (Progress notes); Ex. Q (BAU check sheet).

44.     At 2:45 p.m., a correctional officer doing his rounds recorded that a nurse was giving Mr. Guidos medication. Ex. Q (BAU check sheet).

45.     At 3:30 p.m., a correctional officer doing his rounds recorded that a nurse was checking on Mr. Guidos at that time. Ex. Q (BAU check sheet).

46.     At 9:40 p.m. on November 8, Nurse Mohr assessed Mr. Guidos and heard bowel sounds in all four quadrants. Guidos told Nurse Mohr that he wanted to go to the hospital. She informed him that he would be reassessed in the morning. Ex. N (Progress notes).

47.     Mr. Guidos remained in the Medical Department that evening. Ex. Q (BAU check sheet).

## November 9, 2012

48.     On the morning of November 9, HSA Rebecca Watterson, RN, reassessed Mr. Guidos. He reported a decrease in abdominal pain and nausea. He stated that he was able to push out a small quantity of hard stool. Ex. N (Progress notes).

49.     At 10:00 a.m., a correctional officer doing his rounds recorded that Mr. Guidos was taking medication. Ex. Q (BAU check sheet).

50.     At 12:00 p.m. on November 9, HSA Watterson called Dr. Minshull to discuss Mr. Guidos. She told Dr. Minshull that Mr. Guidos was throwing up blood and that PA Houk had seen him on November 6.  Ex. N (Progress notes); Ex. B (Depo. of R. Watterson) at 88-89.

51.     At that time, HSA Watterson and Dr. Minshull thought Mr. Guidos was constipated and improving. Ex. B (Depo. of R. Watterson) at 82, 93; Ex. C (Depo. of J. Minshull, M.D.) at 62-63.

52.     Dr. Minshull issued no new orders. Ex. C (Depo. of J. Minshull, M.D.) at 61; Ex. M (Progress notes).

53.     At 3:30 p.m., a correctional officer doing his rounds saw Guidos dry heaving into the toilet.  The officer's record states that the incident was reported to medical, and that HSA Watterson spoke with him. Ex. Q (BAU check sheet).

54.     At 7:30 p.m., a correctional officer doing his rounds noted that a nurse checked on Mr. Guidos, and that he was "OK." Ex. Q (BAU check sheet).

55.     At 11:00 p.m., Guidos was moved to the Processing Unit. Ex. Q (BAU check sheet).

56.   The BAU check sheet was completed for Mr. Guidos that evening. Ex. Q (BAU check sheet).

### November 10, 2012

57.   At 10:15 a.m., Guidos moved back from Processing to Medical Unit cell 7. Ex. Q (BAU check sheet).

58.   At 12:15 p.m, a correctional officer doing his rounds noted that a nurse was seeing Mr. Guidos at that time and received medication. Ex. Q (BAU check sheet).

59.   Nurse Larry Sumansky gave Mr. Guidos citrate of magnesia, which he consumed. Nurse Sumansky asked Guidos and a correctional officer to inform him if he vomited. Ex. N (Progress notes); Ex. S (Sumansky depo at 37).

60.   Nurse Sumansky's shift ended at 2:30 p.m. Ex. S (Depo. of L. Sumansky at 35-36).

61.   At 4:30 p.m., Correctional Officer Michael Keefe noted on the check sheet that Mr. Guidos said that his pain is getting worse. Ex. Q (BAU check sheet).

62.   At 5:00, a nurse came to see Mr. Guidos. Officer Keefe documented that a nurse gave Mr. Guidos medication. Ex. Q (BAU check sheet).

63.   At 5:45 p.m., Guidos was moved to Processing. Ex. Q (BAU check sheet).

### November 11, 2012

64.   At 8:30 a.m., Mr. Guidos was moved back to Medical Department cell 7. Ex. Q (BAU check sheet).

65.   Nurse Larry Sumansky testified at around 11:00 a.m., a correctional officer informed him that Mr. Guidos was complaining of discomfort, and asked him to see Guidos. Nurse Sumansky examined Mr. Guidos in his cell. Guidos reported that he had vomited the

9

citrate of magnesia at approximately 9:30 p.m. the previous evening. Guidos told him that he reported this to the nurse on duty at that time. Ex. N (Progress notes), Ex. S (Depo. of L. Sumansky at 46-48).

66. Nurse Sumansky testified that he did not believe that if Guidos had vomited the magnesium citrate the previous evening, it was "not particularly" significant. Ex. S (Depo. of L. Sumansky at 47-48).

67. The BAU check sheet records that at 11:30 a.m., Mr. Guidos talked with a nurse. Ex. Q (BAU check sheet).

68. At approximately 2:00 p.m., the LPN on duty told Nurse Sumansky that Guidos had a small, soft bowel movement. Ex. N (Progress notes).

69. Nurse Sumansky testified that the significance of the small bowel movements was that it meant that the magnesium citrate laxative was beginning to work. Ex. S (Depo. of L. Sumansky at 50).

70. Nurse Sumansky's shift ended at 2:30 that afternoon. Nurse Nichole Allshouse (who at that time was known as Nichole Shaffer) remained in the Medical Department. Ex. T (Depo of N. Allshouse at 28).

71. At 3:45 p.m., a correctional officer doing his rounds documented that Mr. Guidos complained of pain. The officer further documented that at 4:15 p.m., Guidos had spoken with a nurse. Ex. Q (BAU check sheet).

72. Guidos informed Nurse Nichole Allshouse that he was having an in abdominal pain. Ex. N (Progress notes); Ex. T (Allshouse depo at 20).

73. Nurse Allshouse examined his abdomen for approximately three minutes. She heard very few abdominal sounds and, based upon her training, realized that Guidos should be sent to the hospital for further evaluation. Ex. N (Progress notes); Ex. T (Allshouse depo at 21).

74. Nurse Allshouse called HSA Watterson at her home. Watterson concurred with Nurse Allshouse's assessment and instructed her to send Mr. Guidos to the hospital. Ex. N (Progress notes); Ex. T (Allshouse depo at 24).

75. On November 11, 2012 at approximately 4:45 p.m., Derek was transported from the Butler County Prison to the emergency department at Butler Memorial Hospital. Amended Complaint at ¶20.

### III. Medical course at Butler Memorial Hospital

#### A. Events of November 11, 2012 at Butler Memorial Hospital

76. On November 11, 2012 at 5:26 p.m., the Butler Memorial Hospital chart documents that Mr. Guidos arrived by wheelchair via law enforcement accompanied by police. He presented for an evaluation for abdomen pain and constipation. According to the chart, he showed no signs of self-neglect and denies neglect of caretaker, and denied feeling threatened or abused. Ex. U (Butler Hospital Clinical chart).

77. On November 11, 2012 at 6:33 p.m., the emergency department physician ordered a CT scan of Derek's abdomen and pelvis with contrast. Amended Complaint at ¶23.

78. At 6:56 p.m. the CT scan was completed on Derek at Butler Hospital. Amended Complaint at ¶24.

79. At 7:33 p.m. the CT scan was interpreted by John Aryan, M.D. as showing a small bowel obstruction. Amended Complaint at ¶¶ 25-26.

80.     On November 11, 2012 at 8:38 p.m., Derek was diagnosed with a small bowel obstruction by the emergency room doctor at Butler Hospital. Amended Complaint at ¶32.

81.     On November 11, 2012 at 8:55 p.m., Dr. Tony Maalouf became Derek's attending physician after consultation with the ER physician. Amended Complaint at ¶¶ 34-35.

82.     On November 11, 2012 at 9:13 p.m., Dr. Jason Davis interpreted the CT results as being compatible with small bowel obstruction. Ex. V (CT Results).

83.     Throughout the evening of November 11, 2012, Mr. Guidos was in acute distress due to the small bowel obstruction. Amended Complaint at ¶ 36.

**B.     Events of November 12, 2012 at Butler Memorial Hospital.**

84.     On November 12, 2012, Mr. Guidos remained in acute distress due to the small bowel obstruction. Amended Complaint at ¶ 36

85.     Dr. Maalouf did not see Derek until November 12, 2012 at approximately 4:00 p.m. Amended Complaint at ¶37.

86.     On November 12, 2012 at approximately 6:03 p.m., Derek was taken to the operating room at Butler Hospital for emergency surgery to be performed by Dr. Maalouf. Amended Complaint at ¶38.

87.     On November 12, 2012 at approximately 6:15 p.m. upon induction of anesthesia Derek went into cardiac arrest and died. Amended Complaint at ¶39.

88.     An autopsy was performed on Mr. Guidos by Leon Rozin, M.D., a forensic pathologist. Dr. Rozin opined that patient died of sepsis due to acute diffused peritonitis, secondary to rupture of twisted Meckel's diverticulum and obstruction of the small bowel. Ex. W (Autopsy).

## IV. Department of Corrections regulations and inspections

89. The Pennsylvania Department of Corrections has issued a set of regulations at title 37 of the Pennsylvania Code that govern the operation of county jails. *See* 37 Pa. Code § 95.220 *et. seq.*

90. In 2011, the DOC inspection of the Butler County Prison found no violations. Ex. X (DOC Compliance Certificate for 2011).

91. In 2012, the DOC did not inspect the Butler County Prison.

92. In 2013, the DOC inspection of the Butler County Prison found no violations. Ex. Y (DOC Inspection Report for 2013).

JONESPASSODELIS, PLLC

BY: s/Michael R. Lettrich
MICHAEL R. LETTRICH, Esquire
PA I.D. No. 80635
E-Mail: mlettrich@jonespassodelis.com

MARIE MILIE JONES, Esquire
PA I.D. No. 49711
E-Mail: mjones@jonespassodelis.com

JEFFREY COHEN, ESQUIRE
PA I.D. No. 76512
E-mail: jcohen@jonespassodelis.com

Gulf Tower, Suite 3510
707 Grant Street
Pittsburgh, PA 15219
Phone: (412) 315-7272
Fax: (412) 315-7273

Counsel for Defendant,
BUTLER COUNTY

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a true and correct copy of the foregoing document has been forwarded to all counsel of record by:

    \_\_\_\_\_ U.S. First Class Mail, Postage Paid

    \_\_\_\_\_ Hand Delivery

    \_\_\_\_\_ Certified Mail, Return Receipt Requested

    \_\_\_\_\_ Facsimile Transmittal

    \_\_\_\_\_ UPS Delivery

    __X__ Electronic Filing/Service

at the following address:

| | |
|---|---|
| Doug J. Olcott, Esquire<br>DALLAS W. HARTMAN, P.C.<br>201 Green Ridge Drive<br>New Castle, PA 16105<br>*(Counsel for Plaintiff)* | Joshua P. Geist, Esquire<br>GOODRICH & GEIST, P.C.<br>3634 California Avenue<br>Pittsburgh, PA 15212<br>*(Counsel for Plaintiff)* |
| Arthur J. Murphy, Jr., Esquire<br>Peter J. Taylor, Esquire<br>MURPHY TAYLOR<br>326 Third Avenue<br>Pittsburgh, PA 15222<br>*(Counsel for Wexford Health Sources, Inc.)* | James W. Kraus, Esquire<br>John A. Schwab, Esquire<br>PIETRAGALLO GORDON ALFANO BOSICK & RASPANTI, LLP<br>The Thirty-Eighth Floor<br>One Oxford Centre<br>Pittsburgh, PA 15219<br>*(Counsel for Butler Health System, Inc. and Butler Healthcare Providers t/d/b/a Butler Memorial Hospital)* |

JONESPASSODELIS, PLLC

Date: December 4, 2015         s/Marie Milie Jones
                                           MARIE MILIE JONES, Esquire
                                           JEFFREY COHEN, Esquire
                                           MICHAEL R. LETTRICH, Esquire

                                           Counsel for Defendant,
                                           BUTLER COUNTY