UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| Lynn Greygor, Administrator of ) <br> The Estate of Derek T. Guidos, ) <br>   ) <br>   Plaintiff ) <br>   ) <br> v.  ) <br>   ) <br> Wexford Health Sources, Inc., ) <br> Butler Health System, Inc., ) <br> Butler Healthcare Providers t/d/b/a ) <br> Butler Memorial Hospital, and ) <br> Butler County ) <br>   ) <br>   Defendants ) | Civil Action No. 2:14-cv-01254NBF |

## RESPONSE TO BUTLER COUNTY'S CONCISE STATEMENT OF UNDISPUTED MATERIAL FACTS

1. Admitted. By way of further answer, Wexford Health Sources was in violation of the terms of the contract by substituting a physician's assistant for the medical director. (See Health Services Agreement, p. 4, attached as Appendix 13; See Dr. Minshull Depo., p. 36 -37; p. 44; p. 49; attached as Appendix 8; See Watterson Depo., p. 40, attached as Appendix 6; See Houck Depo., p. 22, attached as Appendix 4).

2. Admitted.

3. Admitted.

4. Admitted.

5. Admitted. By way of further response, Dr. Minshull did not follow the terms of the Letter of Agreement with Wexford Health Sources. (See Letter of Agreement, attached as Appendix 15). Further, Wexford Health Sources substituted a physician assistant for the Medical Director, in violation of the Health Services Agreement with Butler County. (See Appendix 13).

  6. Admitted.

  7. Admitted.

  8. Denied.  Plaintiff has requested from Wexford Health Sources the proposal submitted by Wexford Health Sources in response to Butler County's request for proposal.  Wexford Health Sources has not provided Plaintiff with the proposal.  Wexford Health Sources substituted a physician assistant for the Medical Director.  Wexford Health Sources violated the agreement with Butler County.

  9. Admitted.

  10. Denied.  The medical department was staffed from 7 a.m. to 11 p.m. (Shaffer Depo., p. 69, Appendix 10).

  11. Admitted.  By way of further answer, Deputy Warden Shaffer admits that corrections officers are not as equipped to assess an inmate's medical condition as medical personnel.  (Shaffer Depo., p. 133, Appendix 10).

  12. Admitted.  By way of further answer, Deputy Warden Shaffer admits that corrections officers are not as equipped to assess an inmate's medical condition as medical personnel.  (Shaffer Depo., p. 133, Appendix 10).

  13. Denied.  Corrections officers become medical providers when there are no medical staff present.  (Shaffer Depo., p. 133, Appendix 10).

  14. Denied.  Corrections officers become medical providers when there are no medical staff present.  (Shaffer Depo., p. 133, Appendix 10).

  15. Admitted.

  16. Admitted.

  17. Admitted.

18. Denied. During the time Derek Guidos was in "medical", there were times where he was checked every 15 minutes. (See Check Sheets, attached as Appendix 7).

19. Admitted in part. Denied in part. It is admitted that one reason an inmate might be moved to processing is if there's only one inmate in medical. It is denied that is the only reason. An inmate in medical is moved to processing because there was not 24 hour medical staffing at the prison in November, 2012. Thus, the prison would be required to pay a correctional officer overtime to observe the patients in medical. In order to save money, inmates would be moved out of medical and placed into processing. (See Shaffer Depo., p. 38 -39; p. 56; p.82; p. 91; p. 95; p. 133, attached as Appendix 10).

20. Admitted in part. Denied in part. It is admitted that one reason an inmate might be moved to processing is if there are male and female inmates in medical. It is denied that is the only reason. An inmate in medical is moved to processing because there was not 24 hour medical staffing at the prison in November, 2012. Thus, the prison would be required to pay a correctional officer overtime to observe the patients in medical. In order to save money, inmates would be moved out of medical and placed into processing. (See Shaffer Depo., p. 38 -39; p. 56; p.82; p. 91; p. 95; p. 133, attached as Appendix 10).

21. Admitted. By way of further response, Butler County Prison Policy 9.1 also requires that "the health care provider shall submit, in writing, a report on the health care delivery system, providing information to demonstrate that adequate health care is being provided to the inmates and review all findings with prison administration annually." (Butler County Prison Policy 9.1 (J)).

22. Admitted.

23. Admitted.

24. Admitted. By way of further response, the health assessment was completed by an LPN, not an RN. The health assessment was not reviewed by the "responsible physician". This is in violation of Wexford Health Sources Policy J-119 "Health Assessment". (See policy J-119 attached as Appendix 1).

25. Denied. It is not known when Derek Guidos began complaining of abdominal pain. The first notation in the medical record is November 6, 2012 at 3:30 p.m.

26. Admitted. By way of further answer, LPN Mohr failed to document the quality or nature of the bowel sounds, in violation of nursing standards of care and Wexford Health Sources' Nursing Assessment Protocols (Appendix 5). It is denied that she checked Derek Guidos's vital signs. LPN Mohr did not check respirations, in violation of nursing standards of care and Wexford Health Sources' Nursing Assessment Protocols (Appendix 5) . By way of further answer, LPN Mohr violated Wexford Health Sources Policy J-405 "Health Record Format and Contents". (See policy J-405 attached as Appendix 2).

27. Admitted.

28. Admitted.

29. Admitted.

30. Admitted in part. Denied in part. It is admitted that LPN Mohr documented that she heard bowel sounds in all four quadrants. LPN Mohr failed to document the quality or nature of the bowel sounds, in violation of nursing standards of

care and Wexford Health Sources Nursing Assessment Protocols. (Appendix 5). It is denied that she checked Derek Guidos's vital signs. LPN Mohr did not check respirations, in violation of nursing standards of care and Wexford Health Sources Nursing Assessment Protocols. By way of further answer, LPN Mohr violated Wexford Health Sources Policy J-405 "Health Record Format and Contents". (Appendix 2).

31. Admitted. By way of further answer, PA Houk violated WHS Policy J-405 "Health Record Format and Contents." (Appendix 2). PA Houk did not document Derek Guidos's bowel sounds and did not check his vitals. (Houk Depo., p.53-54, Appendix 4). PA Houk's prescribed medical treatment violates WHS Nursing Assessment Protocol "Nausea and Vomiting". (Appendix 5). PA Houk never consulted with Dr. James Minshull regarding Derek Guidos. (Houk Depo., p.59, Appendix 4).

32. Admitted.

33. Admitted.

34. Admitted.

35. Admitted.

36. Admitted.

37. Admitted.

38. Admitted. By way of further answer, there is no record of Mr. Guidos's condition from 9:55 p.m. on November 7 through 8:50 a.m. on November 8. Deputy Warden admits that Mr. Guidos's condition should have been documented by prison staff. (Shaffer Depo., p. 85).

39. Admitted in part. Denied in part. It is admitted that Deputy Warden Shaffer testified that if the inmate's condition were deteriorating, a staff report would

have been generated and a referral to medical would have been made.  It is denied that Mr. Guidos was observed by anyone from 9:55 p.m. on November 7 through 8:50 a.m. on November 8.  By way of further response, Deputy Warden Shaffer admits that medical personnel are better equipped at assessing an inmate's medical condition than corrections officers.  (Shaffer Depo., p. 133).  Further, because there is no documentation of Derek's condition, Butler County does not know Derek's condition, including his pain level, or whether he vomited.  (Shaffer Depo., p. 103, Appendix 10).

40.     Admitted.

41.     Admitted.  By way of further response, Deputy Warden Shaffer admits that medical personnel are better equipped at assessing an inmate's medical condition than corrections officers.  (Shaffer Depo., p. 133).  Further, because there is no documentation of Derek's condition, Butler County does not know Derek's condition, including his pain level, or whether he vomited.  (Shaffer Depo., p. 103, Appendix 10).

42.     Admitted.

43.     Admitted.  By way of further response, "nurse" Mohr is an LPN.

44.     Admitted.

45.     Admitted.  By way of further response, there is no record of this interaction in the medical records.

46.     Denied.  LPN Mohr did not "assess" Derek.  LPN Mohr failed to document the quality or nature of the bowel sounds, in violation of nursing standards of care and WHS Nursing Assessment Protocols.  (Appendix 5).  LPN Mohr violated Wexford Health Sources Policy J-405 "Health Record Format and Contents".  (Appendix 2).

47.     Admitted.

48.     Admitted in part. Denied in part. It is admitted there was some type of interaction between a nurse and Derek. It is denied that the interaction between Nurse Watterson and Derek Guidos occurred in the morning. Nurse Watterson's entry in the record does not have a time. This is in violation of WHS Policy J-405 "Health Record Format and Contents". (Appendix 2; Watterson Depo, p. 76, Appendix 6). It is further denied that Nurse Watterson "assessed" Derek. Nurse Watterson did not perform a physical examination of Derek Guidos, in violation of WHS Nursing Assessment Protocols. (Watterson Depo., p.79, Appendix 6; Appendix 5).

49.     Admitted.

50.     Denied. It is admitted that there is an entry in the medical chart referencing a conversation between Nurse Watterson and Dr. Minshull. It is denied that the conversation took place. The entry by Nurse Watterson is made "out of sequence" and chronologically after November 11, 2012. The entry violates WHS Policy J-405 (Appendix 2). By way of further answer, Nurse Watterson does not document what she told Dr. Minshull about Derek Guidos.

51.     Denied. It is admitted that there is an entry in the medical chart referencing a conversation between Nurse Watterson and Dr. Minshull. It is denied that the conversation took place. The entry by Nurse Watterson is made "out of sequence" and chronologically after November 11, 2012. The entry violates WHS Policy J-405 (Appendix 2). By way of further answer, Nurse Watterson does not document what she allegedly told Dr. Minshull about Derek Guidos.

52. Denied. It is admitted that there is an entry in the medical chart referencing a conversation between Nurse Watterson and Dr. Minshull. It is denied that the conversation took place. The entry by Nurse Watterson is made "out of sequence" and chronologically after November 11, 2012. The entry violates WHS Policy J-405 (Appendix 2). By way of further answer, Nurse Watterson does not document what she allegedly told Dr. Minshull about Derek Guidos.

53. Admitted. By way of further answer, there is no record of dry heaving in the WHS medical record.

54. Admitted. By way of further response, there is no record of his condition from 7:30 p.m. until 10 p.m. on November 8, 2012.

55. Admitted.

56. Denied. Only 2 entries were made on the BAU check sheet during the night of November 9, at 12:30 a.m. and 4:00 a.m. (Appendix 7).

57. Admitted.

58. Admitted.

59. Admitted in part. Denied in part. It is admitted that the medical record states what it states. It is denied that the medical record is accurate. By way of further answer, the entry made by Nurse Sumansky was made on November 13, 2012 at 9:25 a.m. This is approximately fifteen hours after Derek Guidos was pronounced dead. Nurse Sumansky was instructed by his supervisor, Nurse Watterson, to make the late entry. (Sumansky Depo., p. 36, Appendix 21).

60. Admitted.

61. Admitted.

62. Admitted. By way of further answer, there is no record of this interaction in the patient's medical record.

63. Admitted. By way of further answer, there is no record of Derek Guidos's condition from 5:45 p.m. on November 10 through 8:30 a.m. on November 11.

64. Admitted.

65. Denied. It is admitted that the medical record states what it states. It is denied that the medical record is accurate. By way of further answer, the entry made by Nurse Sumansky was made on November 13, 2012 at 9:30 a.m. This is approximately fifteen hours after Derek Guidos was pronounced dead. Nurse Sumansky was instructed by his supervisor, Nurse Watterson, to make the late entry. (Sumansky Depo., p. 36, Appendix 21).

66. Admitted. By way of further answer, according to Nurse Sumansky, he instructed the correctional officer to inform him if he throws up. (Sumansky Depo., p.37, Appendix 21).

67. Admitted. By way of further answer, there is no record of this interaction in the medical record.

68. Denied. It is admitted that the medical record states what it states. It is denied that the medical record is accurate. By way of further answer, the entry made by Nurse Sumansky was made on November 13, 2012 at 9:30 a.m. This is approximately fifteen hours after Derek Guidos was pronounced dead. Nurse Sumansky was instructed by his supervisor, Nurse Watterson, to make the late entry. (Sumansky Depo., p. 36, Appendix 21).

69. Admitted in part. Denied in part. It is admitted that Nurse Sumansky testified that the magnesium citrate was working. It is denied that the magnesium citrate could have worked because Derek vomited up the magnesium citrate. Further, a patient can have a small bowel obstruction and still have a bowel movement. (See Deposition of Dr. Maalouf, p. 20, attached as Appendix 20).

70. Admitted.

71. Admitted.

72. Admitted.

73. Admitted.

74. Admitted.

75. Admitted.

76. Admitted.

77. Admitted.

78. Admitted.

79. Admitted.

80. Admitted.

81. Admitted.

82. Admitted.

83. Admitted.

84. Admitted.

85. Admitted.

86. Admitted.

87. Admitted.

88. Admitted.

89. Admitted.

90. Admitted.

91. After reasonable investigation, Plaintiff is without knowledge or information regarding the allegation set forth in paragraph 91.

92. Admitted.

                                    Respectfully submitted,

                                    /s/ Joshua P. Geist
                                    Joshua P. Geist
                                    Attorney for Plaintiff

                                    Pa.I.D. #85745
                                    Goodrich & Geist, P.C.
                                    3634 California Avenue
                                    Pittsburgh, PA  15212
                                    412-766-1455
                                    412-766-0300 (fax)
                                    josh@goodrichandgeist.com